```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION


Wes Newman, individually and    )
on behalf of all others         )
similarly situated,             )
                                )
          Plaintiff,            )
                                )
                                )
     v.                         )    No. 22 C 4845
                                )
                                )
Benefytt Technologies, Inc.,    )
f/k/a Health Insurance          )
Innovations, Inc.;              )
TogetherHealth Insurance, LLC;  )
Daylight Beta Parent            )
Corporation; and Madison        )
Dearborn Partners, LLC,         )
                                )
          Defendants.           )
```

Memorandum Opinion and Order

Plaintiff Wes Newman brings this putative class action for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the regulations thereunder, the Florida Telemarketing Sales Act ("FTSA"), Fla. Stat. Ann. § 501.059, as well as fraudulent transfer. Earlier this year, defendants Benefytt Technologies, Inc. ("Benefytt"), TogetherHealth Insurance, LLC ("TogetherHealth"), and Daylight Beta Parent Corporation ("Daylight Beta") (collectively, "Debtor Defendants"),

filed for Chapter 11 bankruptcy. This case is automatically stayed as to the Debtor Defendants. *See* 11 U.S.C. § 362.

Before the Debtor Defendants filed for bankruptcy, they brought a joint motion with defendant Madison Dearborn Partners, LLC ("MDP") to dismiss or, in the alternative, stay, this suit. Because of the automatic stay, I only consider that motion as it pertains to MDP. For the following reasons, the motion is granted in part and denied in part.

I.

I accept the following facts alleged in the first amended complaint ("FAC"), ECF 22, as true. Plaintiff is an Illinois resident and the only subscriber and regular user for his non-business cell phone number. FAC ¶ 5. He received the calls at issue while he was in Illinois. *Id.* On July 17, 2019, plaintiff received a call on Benefytt's behalf from Florida-based Health Advisors of America ("HAA"), the purpose of which was to sell Benefytt's products and services. *Id.* ¶ 42. On the call, plaintiff "indicated a desire" not to receive additional telemarketing calls, and the caller put plaintiff's phone number on HAA's internal do-not-call ("IDNC") list. *Id.* ¶ 43. Plaintiff's phone number remained on HAA's IDNC list at least until the filing of the FAC. *Id.*

More than two years later, on October 26, 2021, plaintiff received a phone call from caller ID 414-377-7721. *Id.* ¶ 48. Plaintiff answered, but no one responded, and the call dropped

after about nine seconds. *Id.* ¶ 49. If one tried to call that caller ID back, the telemarketer would not answer; in other words, that phone number was "spoofed." *Id.* ¶ 82. The following day, plaintiff received another call from the same caller ID. *Id.* ¶ 51. This time, when he answered there was a brief pause, a "boop" sound, and then "Jordan with Healthcare Department" spoke. *Id.* ¶ 53. Jordan told plaintiff that the call was being recorded and that it was about health insurance coverage and asked plaintiff several qualifying questions, which plaintiff answered. *Id.* ¶¶ 54–56. Plaintiff qualified, so Jordan told him he would be transferred to a licensed agent. *Id.* ¶ 57. Before doing so, Jordan read plaintiff a short disclaimer, which said that by proceeding, plaintiff was agreeing to have his call transferred regardless of whether he was on any do-not-call list. *Id.* ¶ 58.

Jordan could not transfer the call, however, because plaintiff was on a "frequent litigator" list, so his phone number was "blocked." *Id.* ¶¶ 61, 63. Jordan asked if plaintiff had another number he could call, so plaintiff provided Jordan with a Voice over Internet Protocol ("VoIP") number.[1] *Id.* ¶ 62. Plaintiff received numerous calls on his VoIP number from the same caller ID later that day and the next day, most of which failed to adequately identify the caller or seller. *Id.* ¶ 64. On one of those calls,

---

[1] The FAC states that "[t]his lawsuit does not challenge calls to Plaintiff's VOIP number." *Id.* ¶ 62 n.4.

3

Jordan transferred plaintiff to a woman who said she was with "Medicare Help Center." *Id.* ¶ 67. She asked plaintiff similar qualifying questions as Jordan had the day before, read plaintiff a similar disclaimer and then transferred plaintiff to Milan Yu, who identified himself as a telemarketer for TogetherHealth, Total Insurance Brokers, and Medicare Coverage Helpline. *Id.* ¶¶ 68-71. That call dropped. *Id.* ¶ 71. Plaintiff tried unsuccessfully to call Total Insurance Brokers to learn about who made the call, then he called a representative at Medicare Coverage Helpline, who told plaintiff to call "corporate"--identified as TogetherHealth by the representative--to learn more about the calls. *Id.* ¶¶ 72-73.

According to the FAC, TogetherHealth is a subsidiary of Benefytt, and the two entities conduct telemarketing calls from their Florida headquarters. *Id.* ¶¶ 6-7, 11-13. MDP purchased Benefytt and its affiliates--including TogetherHealth--in August 2020, through its affiliate Daylight Beta. *Id.* ¶¶ 18, 20, 89. Daylight Beta and Benefytt are substantially the same entity, as they share the same books and records, assets and liabilities, and risks and benefits. *Id.* ¶ 18. All defendants are affiliates under common ownership. *Id.* ¶ 19.

Before purchasing Benefytt, MDP allegedly knew of Benefytt's unlawful activities. *Id.* ¶¶ 20, 89, 91. Despite this knowledge, MDP purchased Benefytt and issued a press release endorsing

4

"Benefytt's approach" as "offer[ing] consumers a highly personalized and accessible enrollment experience," and stating that MDP was "excited to build on Benefytt's technology-driven model." *Id.* ¶ 22. Since the acquisition, MDP has allegedly "ratif[ied]" the ongoing unlawful telemarketing "by maintaining ties with Benefytt and TogetherHealth and electing to continue touting its partnership with them without altering their practices." *Id.* ¶¶ 24, 29; *see also id.* ¶ 27 ("Benefytt and Daylight Beta, under the supervision and guidance of MDP, continues to accept business and gain new customers through illegal telemarketing, even though both Benefytt and MDP know that their telemarketing is woefully . . . illegal."). MDP "advises Benefytt as to marketing strategies" and "knowingly continues to accept the benefits of customers gained through noncompliant calls that occurred before it purchased Benefytt." *Id.* ¶ 36. MDP has sufficient control over the telemarketing conduct to stop the violations, but it has not done so. *Id.* ¶¶ 37, 95.

Prior to the purchase, MDP also knew that Benefytt's conduct exposed Benefytt to potential liability in several lawsuits. *Id.* ¶ 90. Plaintiff alleges MDP saddled Benefytt with debt to impair Benefytt's ability to pay judgments. *Id.* ¶ 102. Plaintiff further alleges:

> It is and has been MDP's and Daylight Beta's plan from before they purchased Benefytt and its affiliates to steer Benefytt into bankruptcy if--after siphoning off

5

any benefit from the illegal telemarketing alleged herein--they could not obtain favorable settlements or dismissals for the telemarketing-related lawsuits against Benefytt and its affiliates.

*Id.* ¶ 103. Benefytt, TogetherHealth, and Daylight Beta each filed for Chapter 11 bankruptcy on May 23, 2023. ECF 78. Those proceedings have been consolidated in *In re Benefytt Technologies, Inc.*, No. 23-bk-90566 (S.D. Tex.).

II.

A.

MDP moves to dismiss or, in the alternative, stay plaintiff's case under the first-to-file rule. That rule allows courts faced with duplicative litigation to dismiss or stay a second-filed case. *See Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995). The Seventh Circuit "does not rigidly adhere" to this rule, *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010) (citing *Trippe Mfg.*, 46 F.3d at 629), and "the judge hearing the second-filed case may conclude that it is a superior vehicle and may press forward," *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 838 (7th Cir. 1999). "District courts are accorded 'a great deal of latitude and discretion' in determining whether one action is duplicative of another, but generally, a suit is duplicative if the 'claims, parties, and available relief do not significantly differ between the two actions.'" *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221,

6

223 (7th Cir. 1993) (quoting *Ridge Gold Standard Liquors v. Joseph E. Seagram & Sons, Inc.*, 572 F. Supp. 1210, 1213 (N.D. Ill. 1983)).

The claims in this suit bear some resemblance to those in two other cases pending in this district--*Bilek v. National Congress of Employers, Inc.*, No. 18-cv-3083 (N.D. Ill.), and *Moore v. American Service Insurance Agency LLC*, No. 20-cv-6206. In *Bilek*, the plaintiff seeks relief for violations of TCPA regulations--including the IDNC regulations at issue in this case--and the Illinois Automatic Telephone Dialers Act ("ATDA"), 815 Ill. Comp. Stat. 305/1 *et seq.*, based on telephone calls allegedly made on behalf of Benefytt to sell its products and services. Second Am. Compl., *Bilek*, No. 18-cv-3083 (N.D. Ill. Aug. 20, 2019), ECF 116. Similarly, the complaint in *Moore* alleges violations of TCPA regulations, again based on calls made on Benefytt's behalf. Compl., *Moore*, No. 20-cv-6206 (N.D. Ill. Oct. 19, 2020), ECF 1.

Many of the claims in this case depend on similar core factual allegations as those in *Bilek* and *Moore*. True, this suit brings claims under the FTSA, but simply repackaging claims arising out of the same set of facts under a different statute does not automatically render the claims significantly different. *See Humphrey v. United Healthcare Servs., Inc.*, No. 14 C 1157, 2014 WL 3511498, at *2 (N.D. Ill. July 16, 2014) (finding sufficient similarity between claims based on same underlying facts). Distinguishing this case somewhat from the others is that it

7

concerns calls made after MDP's acquisition of Benefytt, and over which MDP had alleged control. Further, Plaintiff's fraudulent transfer claim is entirely unique to this case and is premised on facts not alleged in *Bilek* or *Moore*. But because I conclude below that the automatic stay applies to the fraudulent transfer claim, the substantial difference between the fraudulent transfer claim and the claims in *Bilek* and *Moore* factors only minimally into my first-to-file analysis.

The relief sought in the three suits is also similar; it includes damages, injunctive relief, and attorneys' fees.[2] Further, Benefytt is a common defendant in all three suits, and is the only remaining defendant in *Bilek*.[3] And even though the defendants otherwise differ, plaintiff cannot avoid the first-to-file rule simply by naming different defendants. *See Kohn Law Grp. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015) ("A contrary holding could allow a party . . . to skirt the first-to-file rule merely by omitting one party from a second lawsuit."). Indeed, MDP is sued in this action in its capacity as an affiliate of Benefytt.

---

[2] The *Bilek* action seeks declaratory relief, too, but that does not create a meaningful difference.

[3] Benefytt was formerly known as Health Insurance Innovations, Inc., and is so named in *Bilek*.

In sum, whether this case is sufficiently similar to *Bilek* and *Moore* is a close call. But an additional factor weighs in favor of allowing this suit to proceed against MDP: both *Bilek* and *Moore* are currently stayed as to all remaining defendants because of the bankruptcy proceedings. It makes little sense to stay this case in deference to first-filed cases that are stalled for however long it will take for the automatic stay to be lifted. So, I decline to exercise my discretion to dismiss or stay this case under the first-to-file rule.

B.

MDP also argues for dismissal of plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). Plaintiff's TCPA claim is brought under 47 U.S.C. § 227(c)(5), which provides a private right of action for violations of certain Federal Communications Commission ("FCC") regulations, including the IDNC regulations found at 47 C.F.R. § 64.1200(d). MDP argues this claim should be dismissed because, in its view, the FAC does not sufficiently allege that plaintiff made an IDNC request to Benefytt. Not so. For starters, the FAC clearly alleges that plaintiff received a telemarketing call from HAA on July 17, 2019, and that on the call he "indicated a desire to not receive subsequent telemarketing calls," and indeed that "[t]he telemarketer placed [p]laintiff's cellular telephone number on [HAA's IDNC] list on that date." FAC ¶ 43.

9

MDP's main argument on this point, though, is that plaintiff does not allege that an IDNC request made to HAA counts as one made to Benefytt. But the FAC alleges that the call from HAA was made "on behalf of Defendant Benefytt" and that the telemarketer on the call "was trying to sell Benefytt's goods and services." *Id.* ¶ 42. It also alleges that Benefytt "has possession of [HAA's] IDNC list," *id.* ¶ 44, and that it "has always had the practical and contractual ability to obtain [HAA's] call data and IDNC lists and coordinate it with its own," *id.* ¶ 45 (emphasis omitted). Taking these allegations as true and drawing all reasonable inferences in plaintiff's favor, it is plausible that HAA acted on Benefytt's behalf on that call. Where a plaintiff accuses an entity of making calls on another's behalf, it would be difficult or impossible without the benefit of discovery to allege more than what plaintiff has alleged here.

MDP also argues on both standing and Rule 12(b)(6) grounds that, assuming plaintiff did not himself make an IDNC request to Benefytt, he cannot pursue a claim that defendants failed to maintain adequate IDNC policies and procedures. As just discussed, plaintiff adequately alleges he made an IDNC request to Benefytt, so this argument fails. To the extent MDP lodges this argument regardless of whether plaintiff made an IDNC request to Benefytt, I decline to consider it because, having concluded that plaintiff has a viable claim for violation of 47 C.F.R. § 64.1200(d), I need

10

not decide now whether a particular theory or just one part of that claim is viable. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." (emphasis in original) (citation omitted)).

C.

MDP next argues plaintiff's FTSA claim fails because he does not allege, other than in conclusory fashion, that the calls he received were "conduct[ed] . . . from a location in Florida." Fla. Stat. Ann. § 501.059(1)(e). It is true that some of plaintiff's allegations on this point are conclusory, *see, e.g.*, FAC ¶¶ 120, 135, 149, 159, 164, but other allegations collectively permit the reasonable inference that the calls plaintiff received were made from Florida.[4] For example, plaintiff alleges that the July 17, 2019, call was from Florida-based HAA. Additionally, he alleges that Benefytt has its principal place of business in Florida, and that it "conducts telephone sales calls within the State of Florida to consumers located in Florida and nationwide." *Id.* ¶ 6.

---

[4] Because I find that the FAC sufficiently alleges that the calls were made from a location in Florida, I need not address plaintiff's argument that to "conduct" a phone call from Florida within the meaning of the FTSA does not necessarily require that the call be placed from Florida.

11

TogetherHealth, Benefytt's subsidiary, is also allegedly headquartered in Florida and "actively solicits business for itself and its co-defendants" from there. *Id.* ¶ 13. Furthermore, on one of the alleged calls, Milan Yu identified himself as a Telemarketer with Florida-based TogetherHealth. And on another call, a representative at Medicare Coverage Helpline--an organization that had allegedly called plaintiff earlier--told plaintiff to call Florida-based TogetherHealth to get more information about the calls he had been receiving. These allegations plausibly suggest, even if only circumstantially, that some of the calls plaintiff received were made from Florida.[5]

In its reply brief, MDP contends that it does not qualify as a "telephone solicitor" under the FTSA because it does not do business in Florida, and that it cannot be liable as an "affiliate" of a telephone solicitor. But this argument was not raised and developed in its opening brief, even though it could have been, so it is waived for now. *See Peterson v. Vill. of Downers Grove*, 103 F. Supp. 3d 918, 925 (N.D. Ill. 2015) (citing *Carroll v. Lynch*, 698 F.3d 561, 564 n.2 (7th Cir. 2012)).

---

[5] To the extent MDP suggests that the calls to plaintiff's VoIP number should be disregarded entirely, *see* Reply Br., ECF 111 at 18-19, I disagree. The FAC sufficiently alleges a connection between those calls and the calls plaintiff challenges here, since (1) the callers only had plaintiff's VoIP number as a result of calls made to plaintiff's cell phone number, and (2) at least some of the calls to plaintiff's VoIP number were from the same caller ID as the other calls and had similar content.

D.

Finally, MDP argues that plaintiff's fraudulent transfer claim is subject to the automatic stay in the bankruptcy proceeding.[6] Debtor Defendants have sent plaintiff's counsel a cease-and-desist letter contending the same. *See* ECF 104-1. Whether looking to Fifth or Seventh Circuit case law, I agree. The Seventh Circuit has concluded that "property fraudulently or improperly transferred by the debtor before bankruptcy" is considered property of the estate under 11 U.S.C. § 541, and is therefore subject to the automatic stay. *Koch Refin. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1343 (7th Cir. 1987) (citing *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 221 (1941); additional citations omitted). The Fifth Circuit has concluded the same, holding that a debtor has a "'legal or equitable interest[]' in" property fraudulently transferred "in an effort to put it out of the reach of creditors," and that the "automatic stay under section 362(a) thus applies and prevents a creditor from continuing to pursue a cause of action under [a state fraudulent transfer statute] after a petition for bankruptcy has

---

[6] MDP raises this argument for the first time in its reply brief, so it would typically be waived. *See Peterson*, 103 F. Supp. 3d at 925 (citing *Carroll*, 698 F.3d at 564 n.2). However, the circumstances here make that rule inappropriate. MDP's opening brief was filed before the Debtor Defendants' bankruptcy petition, so it could not have raised the argument then. Plaintiff did not request an opportunity to file a sur-reply to address this issue.

been filed." *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275 (5th Cir. 1983); *see also In re GenTek Inc.*, 328 B.R. 423, 429 (Bankr. D. Del. 2005) (observing as a "fundamental bankruptcy principle that the right to pursue fraudulent transfer claims shifts to the debtor in possession upon the filing of a chapter 11 petition notwithstanding that, outside of bankruptcy, such claims belong solely to the creditors"). Plaintiff's fraudulent transfer claim is therefore stayed pending resolution of the bankruptcy proceeding.

### III.

For the foregoing reasons, MDP's motion to dismiss or, in the alternative, stay, is granted in part insofar as the fraudulent transfer claim is stayed under 11 U.S.C. § 362. The motion is otherwise denied.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: August 31, 2023